UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SUSAN DENENBERG, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> KBR, INC., STUART J. BRADIE, MARK W. SOPP and BRIAN K. FERRAIOLI, <br><br> Defendants. | Case No. 4:17-cv-1375 <br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Susan Denenberg ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against Defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding KBR, Inc. ("KBR" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired KBR securities between February 26, 2016 and April 27, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. KBR provides professional services and technologies across the asset and program life-cycle within the government services and hydrocarbons industries worldwide. The company operates through three segments: Government Services, Technology & Consulting, and Engineering & Construction. KBR was founded in 1901 and is based in Houston, Texas. The Company's common stock trades on the NYSE under the ticker symbol "KBR."

3. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's United Kingdom ("UK") subsidiaries had violated applicable bribery and corruption laws; and (ii) that as a result of the foregoing, KBR's public statements were materially false and misleading at all relevant times.

4. On April 28, 2017, the United Kingdom's Serious Fraud Office confirmed that it had opened an investigation into "the activities of KBR's UK subsidiaries, their officers, employees and agents for suspected offences of bribery and corruption."

5. On this news, KBR's share price fell $1.43, or 9.24%, to close at $14.05 on April 28, 2017.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant KBR is headquartered in this district and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

10. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11. Plaintiff, as set forth in the attached Certification, acquired KBR securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12. Defendant KBR is incorporated in Delaware, and the Company's principal executive offices are located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002. KBR's common stock trades on the NYSE under the ticker symbol "KBR."

13.     Defendant Stuart J. Bradie ("Bradie") has served as the Company's Chief Executive Officer ("CEO") and President at all relevant times.

14.     Defendant Mark W. Sopp ("Sopp") has served as the Company's Chief Financial Officer ("CFO") and Executive Vice President since February 28, 2017.

15.     Defendant Brian K. Ferraioli ("Ferraioli") served as the Company's CFO and Executive Vice President from October 28, 2013 until February 28, 2017.

16.     The Defendants referenced above in ¶¶ 13-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     KBR provides professional services and technologies across the asset and program life-cycle within the government services and hydrocarbons industries worldwide. The company operates through three segments: Government Services, Technology & Consulting, and Engineering & Construction.

### Materially False and Misleading Statements Issued During the Class Period

18.     The Class Period begins on February 26, 2016, when KBR filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 10-K").  For the quarter, KBR reported net income of $42 million, or $0.29 per diluted share, on revenue of $1.08 billion, compared to a net loss of $1.24 billion, or $8.57 per diluted share, on revenue of $1.41 billion for the same period in the prior year.  For fiscal year 2015, KBR reported net income of $203 million, or $1.40 per diluted share, on revenue of $5.09 billion, compared to a net loss of $1.26 billion, or $8.66 per diluted share, on revenue of $6.36 billion for fiscal year 2014.

4

19.     In the 2015 10-K, the Company stated, in relevant part:

**Compliance**

Conducting our business with ethics and integrity is a key priority for KBR. We are subject to numerous compliance-related laws and regulations, including the U.S. Foreign Corrupt Practices Act (the "FCPA"), the U.K. Bribery Act, other applicable anti-bribery legislation and laws and regulations regarding trade and exports. We are also governed by our own Code of Business Conduct and other compliance-related corporate policies and procedures that mandate compliance with these laws. Our Code of Business Conduct is a guide for every employee in applying legal and ethical practices to our everyday work. The Code of Business Conduct describes not only our standards of integrity but also some of the specific principles and areas of the law that are most likely to affect our business. We regularly train our employees regarding anti-bribery issues and our Code of Business Conduct.

20.     The Company's Code of Business Conduct, published at all relevant times on KBR's website, addresses KBR's policies regarding bribery and corruption in further detail, stating in relevant part:

**BRIBERY AND CORRUPTION**

Employees and third parties acting on KBR's behalf are prohibited from making, offering, authorizing or promising to make any Improper Payments. The term "Improper Payments" is used to describe a broad range of unlawful payments of money or anything of value that are usually in the nature of kickbacks, bribes or payoffs made in order to influence favorably some decision affecting a company's business or for the personal gain of an individual. These types of payments are illegal, unethical and prohibited by this Code of Business Conduct.

The Company prohibits all Employees and third parties acting on KBR's behalf from paying, offering, promising or authorizing any bribe, kickback or other similar unlawful payment of money or anything of value to any public official, government employee, political party or party official, candidate for public office, or employee of a public international organization in any country.

All transactions must be executed, and access to assets is permitted, only in accordance with management's authorization.

Employees are also prohibited from receiving, directly or indirectly, from a third party any Improper Payments or anything of significant value in connection with a transaction entered into by the Company.

The Company, its Employees and third parties acting on its behalf are prohibited from making any "facilitating" or expediting payments to any government official or employee, the purpose of which is to expedite or to secure the performance of non-discretionary routine governmental action by such official.

In very rare circumstances, an Employee may deem it necessary to make a payment to a government official or employee to avoid an imminent threat to personal health, safety or freedom in a situation where the Employee is unable to obtain the necessary prior approval given the situation. If a payment is made under these circumstances, as soon as possible, the Employee who made the payment must contact the Director of Compliance or his or her delegate for further direction.

Because actions of third parties acting on behalf of KBR, like actions of Employees, can create liability for the company and damage its reputation, all third parties who may interact with non-U.S. government officials or employees on behalf of the Company and other designated high-risk third parties shall be:

(i)   Subject to appropriate risk-based due diligence prior to being engaged;

(ii)  Prohibited from making Improper Payments; and

(iii) Subject to additional anti-corruption terms and conditions as appropriate.

Depending on the circumstances, donations to charitable organizations or community organizations could be considered to be Improper Payments.

The Procedures for Implementation of KBR's Anti-Corruption Policies provide further guidance on the processes required to engage third parties and make donations.

21. The 2015 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Bradie and Ferraioli, stating that the financial information contained in the 2015 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

22. On April 29, 2016, KBR filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q").  For the quarter, KBR reported net income of $42 million, or $0.30 per diluted share, on revenue of $996 million, compared to net income of $44 million, or $0.30 per diluted share, on revenue of $1.43 billion for the same period in the prior year.

23. The Q1 2016 10-Q contained signed certifications pursuant to SOX by Defendants Bradie and Ferraioli, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24. On July 29, 2016, KBR filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 10-Q").  For the quarter, KBR reported net income of $47 million, or $0.32 per diluted share, on revenue of $1 billion, compared to net income of $62 million, or $0.43 per diluted share, on revenue of $1.38 billion for the same period in the prior year.

25. The Q2 2016 10-Q contained signed certifications pursuant to SOX by Defendants Bradie and Ferraioli, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26. On November 1, 2016, KBR filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 10-Q").  For the quarter, KBR reported a net loss of $63 million, or $0.44 per diluted share, on revenue of $1.07 billion, compared to net income of $55 million, or $0.38 per diluted share, on revenue of $1.19 billion for the same period in the prior year.

27. The Q3 2016 10-Q contained signed certifications pursuant to SOX by Defendants Bradie and Ferraioli, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28.     On February 24, 2017, KBR filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2016 (the "2016 10-K").  For the quarter, KBR reported a net loss of $87 million, or $0.61 per diluted share, on revenue of $1.19 billion, compared to net income of $42 million, or $0.29 per diluted share, on revenue of $1.08 billion, for the same period in the prior year.  For fiscal year 2016, KBR reported a net loss of $61 million, or $0.43 per diluted share, on revenue of $4.26 billion, compared to net income of $203 million, or $1.40 per diluted share, on revenue of $5.09 billion for fiscal year 2015.

29.     In the 2016 10-K, the Company stated, in relevant part:

**Compliance**

Conducting our business with ethics and integrity is a key priority for KBR. We are subject to numerous compliance-related laws and regulations, including the U.S. Foreign Corrupt Practices Act (the "FCPA"), the U.K. Bribery Act, other applicable anti-bribery legislation and laws and regulations regarding trade and exports. We are also governed by our own Code of Business Conduct and other compliance-related corporate policies and procedures that mandate compliance with these laws. Our Code of Business Conduct is a guide for every employee in applying legal and ethical practices to our everyday work. The Code of Business Conduct describes not only our standards of integrity but also some of the specific principles and areas of the law that are most likely to affect our business. We regularly train our employees regarding our Code of Business Conduct and other specific areas including anti-bribery compliance and international trade compliance.

30.     The Company's Code of Business Conduct, published at all relevant times on KBR's website, addresses KBR's policies regarding bribery and corruption in further detail, stating in relevant part:

**BRIBERY AND CORRUPTION**

Employees and third parties acting on KBR's behalf are prohibited from making, offering, authorizing or promising to make any Improper Payments. The term "Improper Payments" is used to describe a broad range of unlawful payments of money or anything of value that are usually in the nature of kickbacks, bribes or payoffs made in order to influence favorably some decision affecting a company's

8

business or for the personal gain of an individual. These types of payments are illegal, unethical and prohibited by this Code of Business Conduct.

The Company prohibits all Employees and third parties acting on KBR's behalf from paying, offering, promising or authorizing any bribe, kickback or other similar unlawful payment of money or anything of value to any public official, government employee, political party or party official, candidate for public office, or employee of a public international organization in any country.

All transactions must be executed, and access to assets is permitted, only in accordance with management's authorization.

Employees are also prohibited from receiving, directly or indirectly, from a third party any Improper Payments or anything of significant value in connection with a transaction entered into by the Company.

The Company, its Employees and third parties acting on its behalf are prohibited from making any "facilitating" or expediting payments to any government official or employee, the purpose of which is to expedite or to secure the performance of non-discretionary routine governmental action by such official.

In very rare circumstances, an Employee may deem it necessary to make a payment to a government official or employee to avoid an imminent threat to personal health, safety or freedom in a situation where the Employee is unable to obtain the necessary prior approval given the situation. If a payment is made under these circumstances, as soon as possible, the Employee who made the payment must contact the Director of Compliance or his or her delegate for further direction.

Because actions of third parties acting on behalf of KBR, like actions of Employees, can create liability for the company and damage its reputation, all third parties who may interact with non-U.S. government officials or employees on behalf of the Company and other designated high-risk third parties shall be:

(iv)   Subject to appropriate risk-based due diligence prior to being engaged;

(v)    Prohibited from making Improper Payments; and

(vi)   Subject to additional anti-corruption terms and conditions as appropriate.

Depending on the circumstances, donations to charitable organizations or community organizations could be considered to be Improper Payments.

The Procedures for Implementation of KBR's Anti-Corruption Policies provide further guidance on the processes required to engage third parties and make donations.

31. The 2016 10-K contained signed certifications pursuant to SOX by Defendants Bradie and Ferraioli, stating that the financial information contained in the 2016 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32. On April 28, 2017, KBR filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 10-Q"). For the quarter, KBR reported net income of $37 million, or $0.26 per diluted share, on revenue of $1.10 billion, compared to net income of $42 million, or $0.30 per diluted share, on revenue of $996 million for the same period in the prior year.

33. The Q1 2017 10-Q contained signed certifications pursuant to SOX by Defendants Bradie and Sopp, stating that the financial information contained in the Q1 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34. The statements referenced in ¶¶ 18-33 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's United UK subsidiaries had violated applicable bribery and corruption laws; and (ii) that as a result of the foregoing, KBR's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

35. That same day, the United Kingdom's Serious Fraud Office confirmed that it had opened an investigation into "the activities of KBR's UK subsidiaries, their officers, employees and agents for suspected offences of bribery and corruption."

36. On this news, KBR's share price fell $1.43, or 9.24%, to close at $14.05 on April 28, 2017.

37. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired KBR securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, KBR securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by KBR or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of KBR;

- whether the Individual Defendants caused KBR to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of KBR securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

44. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- KBR securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold KBR securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

Case 4:17-cv-01375 Document 1 Filed in TXSD on 05/03/17 Page 14 of 19

49. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of KBR securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire KBR securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

50. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for KBR securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about KBR's finances and business prospects.

51. By virtue of their positions at KBR, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

14

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

52. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of KBR securities from their personal portfolios.

53. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of KBR, the Individual Defendants had knowledge of the details of KBR's internal affairs.

54. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of KBR. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to KBR's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of KBR securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning KBR's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired KBR securities at

artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

55. During the Class Period, KBR securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of KBR securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of KBR securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of KBR securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

56. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

58. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. During the Class Period, the Individual Defendants participated in the operation and management of KBR, and conducted and participated, directly and indirectly, in the conduct of KBR's business affairs.  Because of their senior positions, they knew the adverse non-public information about KBR's misstatement of income and expenses and false financial statements.

60. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to KBR's financial condition and results of operations, and to correct promptly any public statements issued by KBR which had become materially false or misleading.

61. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which KBR disseminated in the marketplace during the Class Period concerning KBR's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause KBR to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of KBR within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of KBR securities.

62. Each of the Individual Defendants, therefore, acted as a controlling person of KBR. By reason of their senior management positions and/or being directors of KBR, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, KBR to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of KBR and possessed the power to

control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

63. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by KBR.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 3, 2017

Respectfully submitted,

*/s/ Willie C. Briscoe*
Willie C. Briscoe
Texas Bar No.: 24001788
Southern District No.: 25157
The Briscoe Law Firm, PLLC
3131 McKinney Avenue, Suite 600
Dallas, Texas 75204
214-643-6011
281-254-7789 (Facsimile)
wbriscoe@thebriscoelawfirm.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
            ahood@pomlaw.com
            hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*